**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**PRO IMAGE INSTALLERS, INC.,**
     **Plaintiff,**

**vs.**                          **CASE NO.:  3:08cv273/MCR/MD**

**BARBARA R. DILLON, DAVE OSBORNE
CONSTRUCTION CONTRACTING, INC.,
NATIONWIDE FIXTURE INSTALLATIONS, INC.,
SOUTHWEST FIXTURE INSTALLERS, INC.,
AMERICAN INSTALLATION COMPANIES, L.L.C.,
DAVID T. OSBORNE, DYNAMIC RESOURCES INC.,
and EVAN GINIGER**
     **Defendants.**
_____

## REPORT AND RECOMMENDATION

This case is before the court upon pro se defendant Barbara R. Dillon's Motion to Dismiss Count II of Plaintiff's complaint and motion to preclude the application of Florida Law to Plaintiff's claims and Memorandum of Law in Support (doc. 112), to which plaintiff has responded in opposition.  (Doc. 123).  The case is referred to the undersigned for report and recommendation pursuant to Local Rule 72.2(E).

Background

In its Second Amended Verified Complaint and Demand for Jury Trial, damages and injunctive relief ("complaint") (doc. 88), plaintiff Pro Image Installers, Inc. ("Pro Image") sues defendants Barbara R. Dillon ("Dillon"), Dave Osborne Construction Contracting, inc. ("Osborne Contracting"), Nationwide Fixture Installations, Inc. ("Nationwide"), Southwest Fixture Installers, Inc. ("Southwest"), American Installation Companies, L.L.C. ("American Installation"), David T. Osborne ("Osborne"), Dynamic Resources, Inc., ("Dynamic

Resources") and Evan Giniger ("Giniger").  The nine count complaint arises out of a Master Subcontractor Agreement between the plaintiff and defendant Dillon.  (Doc. 88, exh. A).  Pro Image is in the business of fixture, graphics and millwork installations.  (Doc. 88 ¶ 21).  It developed and uses specialized proprietary software for project management which may be accessed and utilized only by authorized personnel.  (¶¶ 22-23).  Plaintiff's business success is highly dependent upon things such as confidential pricing information, customer information, proprietary software systems, specialized training provided to its employees and established goodwill with current customers and subcontractors, and therefore it takes steps to maintain the secrecy of such information by limiting access and requiring confidentiality or non-compete agreements of those to whom access was provided.  (¶¶ 24-25).

Defendant Dillon was hired by plaintiff in mid-2006, and as a condition to her retention as a subcontractor entered into a Master Subcontract Agreement ("Subcontract Agreement") in Navarre, Florida.  (Doc. 88, ¶¶ 26-27, exh. A).  Dillon, who had no previous experience in the fixture installation industry, worked in sales and consulting for Pro Image.  She resided in Minnesota during the term of her service, but made regular trips to Florida for training, consultations and client meetings on plaintiff's behalf, and attended trade shows around the United States as a subcontractor for plaintiff.   In her role as a subcontractor, she had access to trade secrets, proprietary software and confidential information, and personally acquired customer loyalty and goodwill.  (¶¶ 28-31, 34).

Osborne Contracting, Nationwide, Southwest and American Installation provide services substantially similar to those provided by the plaintiff and compete for the same customer base. (Doc. 88, ¶ 35).

Dillon was recruited by Osborne on May 2, 2007 while still employed by the plaintiff.  She interviewed with Osborne in Plymouth Massachusetts, and began working for Nationwide on May 7, 2007, despite Osborne's knowledge of Dillon's Subcontract Agreement with Pro Image.   (¶¶ 36-38).  Dillon allegedly failed to comply with previously established professional obligations on behalf of Pro Image and its customers and instead began to disclose trade secrets and confidential business information to Osborne on behalf of the Minnesota defendants (Osborne, Osborne Construction and American Installation) (¶¶40-41).

Plaintiff contends that one of its clients cancelled scheduled work and has done no further business with it since Dillon's resignation, that Dillon attended a trade show on behalf of defendant Nationwide prior to plaintiff's receipt of her resignation, and that Dillon failed to return records and electronic data after resigning.  (¶¶ 42, 43, 44, 62).

Upon learning that Dillon had become affiliated with one or more of the Minnesota defendants, plaintiff notified Osborne in writing that it considered plaintiff's employment to be in violation of the non-compete and confidentiality restrictions of the Subcontract agreement.  (¶ 45).  Between May and September of 2007, Dillon was an employee or agent for Nationwide, Southeast, American Installation and Osborne Contracting who engaged in sales activities and attempted to solicit business.  (¶¶ 46-50).

In September of 2007 Dillon went to work for another of plaintiff's competitors, Dynamic Resources, despite having advised the CEO of that company, defendant Giniger, about the Subcontractor Agreement.  (¶¶ 51-52)  Since that time, Dynamic Resources has made use of Dillon's training, education, trade secrets and confidential information to become more competitive and gain a business advantage.  (¶¶ 53-61).

The specific claims are as follows:

Count I-Breach of Contract: Confidentiality (Dillon)

Count II-Breach of Contract: Non-compete (Dillon)

Count III-Breach of Fiduciary Duty/Duty of Loyalty (Dillon)

Count IV-Misappropriation of Trade Secrets (Dillon, Osborne, Nationwide, Osborne Contracting, Southwest and American Installation)

Count V-MIsappropriation of Trade Secrets (Dillon, Giniger, and Dynamic Resources)

Count VI-Tortious interference with business relations (Dillon, Osborne Contracting, Southwest, Nationwide, and American Installation)

Count VII- Tortious interference with business relations (Dillon, Giniger, and Dynamic Resources)

Count VIII- Tortious interference with contractual relations (Osborne, Osborne Contracting, Nationwide, Southwest and American Installation)

Count IX- Tortious interference with contractual relations (Dynamic Resources and Giniger).

Defendant Dillon now moves to dismiss Count II of the complaint and moves to preclude application of Florida law to plaintiff's claims.   Plaintiff has responded in opposition.

<u>Prior Litigation</u>

Dillon notes that on May 17, 2007, before bringing the instant action, plaintiff field a six-count complaint against Dillon in the Minnesota Fifth Judicial District Court, County of Blue Earth, Case No. CV-07-1589.  (Doc. 112, exh. A).  The Minnesota case arose from the same Subcontractor Agreement that is at issue in this case, and alleged breach of the non-compete provision of the Agreement, breach of confidentiality, misappropriation of trade secrets and breach of fiduciary duty.  Dillon moved for partial summary judgment in that case, seeking an order holding that the non-compete agreement was unreasonable as a matter of law and therefore invalid and unenforceable, and that Minnesota law rather than Florida law applied to the case.   To this extent, the motion for partial summary judgment was granted. (Doc. 112, exh. B).  The court found that summary judgment was appropriate as to the application of law issue because Pro Image was judicially estopped from relying on Florida law after having chosen to file suit in Minnesota and rely on Minnesota law for a portion of the litigation.  (Doc. 112, exh. B at 9).  It also found the non-compete agreement to be unreasonable, excessive, and as a matter of law unenforceable because it restricted Dillon from employment "anywhere on the planet, with any business offering the same or substantially the same products or services as Pro Image for a full five years," and other portions of the agreement provided protection.  (Doc. 112, exh. B at 11). The Minnesota court found that genuine issues of material fact remained regarding Dillon's compensation and services performed and denied summary judgment on this issue.  (Doc. 112, exh. B at 12).

The parties stipulated to a dismissal without prejudice due to plaintiff Pro Image's lack of a certificate of authority to do business in Minnesota as required under Minn. Stat. § 303.20.  (Doc. 112, exh. D).  Judgment was entered accordingly on June 20, 2008.

Dillon now contends that plaintiff is collaterally estopped from asserting the application of Florida law to any claims before this court, in particular Count IV and V for misappropriation of trade secrets pursuant to Florida's Uniform Trade Secret Act, and that

the Minnesota court's ruling on the non-compete portion of the Subcontractor Agreement
is res judicata as to that claim.

<u>Count II</u>

Count II of plaintiff's complaint alleges that Dillon breached the non-compete
provision of her Subcontract Agreement, a matter that was considered by the Minnesota
court.  Dillon asserts that the Minnesota court's partial summary judgment ruling on the
validity of the non-compete provision and the choice of law issue should be given res
judicata effect.  Plaintiff on the other hand asserts that there was no final judgment on the
merits, only a non-appealable partial summary judgment, and that the Minnesota court did
not have jurisdiction over the case pursuant to § 303.20, Minnesota Statutes.

The parties agree that Minnesota law controls the res judicata/collateral estoppel
analysis.  *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486 (11th Cir. 1985) ("where
the first suit is brought in state court and the second suit is brought in federal court based
on diversity, state law of *res judicata* is to be applied")(citations omitted); *Ruple v. City of
Vermillion*, 714 F.2d 860, 861-862 (8th Cir. 1983) (the effect of a prior judgment is governed
by the law of the forum that rendered the judgment in question).   Under Minnesota law,
collateral estoppel precludes the relitigation of an issue that was previously decided by
another court as a final judgment.  *Ortega-Maldonado v. Allstate Insurance Co.*, 519
F.Supp. 2d 981, 993 (D.Minn. 2007) (citing *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct.
411, 66 L.Ed.2d. 308 (1980); *W.F.M. Inc. v. Cherry County*, 279 F.3d 640, 643 (8th Cir.
2002); *Schumacher v. Halverson*, 467 F.Supp.2d 939, 945-46 (D.Minn. 2006)).
Specifically, it precludes relitigation of an issue where:

> (1) the issue was identical to one in a prior adjudication; (2) there was a final
> judgment on the merits; (3) the estopped party was a party or in privity with
> a party to the prior adjudication; and (4) the estopped party was given a full
> and fair opportunity to be heard on the adjudicated issue.

*Ortega-Maldonado*, 519 F.Supp.2d at 993 (citing *Ill. Farmers Ins. Co. v. Reed*, 662 N.W.2d
529, 531 (Minn. 2003); *A&H Vending Co. v. Comm'r of Revenue*, 608 N.W.2d 544, 547
(Minn. 2000).  Each of the four elements must be satisfied.  *Id.*  Similarly, res judicata
serves as an absolute bar to a subsequent claim when:

> (1) the earlier claim involved the same set of factual circumstances; (2) the
> earlier claim involved the same parties or their privies; (3) there was a final
> judgment on the merits; (4) the estopped party had a full and fair opportunity
> to litigate the matter.

*Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004) (citing *State v. Joseph*, 636 N.W. 2d 322, 327 (Minn. 2001); *Wilson v. Comm'r of Revenue*, 619 N.W.2d 194, 198 (Minn. 2000)).  As with collateral estoppel, all four prongs of the test must be met for res judicata to apply.  *Id.* (citing *Joseph*, 636 N.W. 2d at 327-329).

Defendant argues that the questions before this court are identical to those previously determined by the Minnesota court:  the parties are identical; the Agreement at issue is the same Agreement that was before the Minnesota court; and the parties had a full and fair opportunity to be heard in the Minnesota litigation.   However, whether defendant argues for application of res judicata or collateral estoppel, the fact that there was no entry of a "final judgment" defeats her argument.  This is true regardless of whether the plaintiff seeks to take a position in this case that is inconsistent with that taken in the prior litigation.  Rule 54.02, of the Minnesota Rules of Civil Procedure provides:

> When multiple claims for relief or multiple parties are involved in an action,
> the court may direct the entry of a final judgment as to one or more but fewer
> than all of the claims or parties only upon an express determination that there
> is no just reason for delay and upon an express direction for the entry of
> judgment. In the absence of such determination and direction, any order or
> other form of decision, however designated, which adjudicates fewer than all
> the claims or the rights and liabilities of fewer than all the parties shall not
> terminate the action as to any of the claims or parties, and the order or other
> form of decision is subject to revision at any time before the entry of
> judgment adjudicating all the claims and the rights and liabilities of all the
> parties.

Minn.R.Civ.P.   54.02.   In accordance with this rule, failure by the trial court to make an express determination that there was no just reason for delay in entry of judgment, renders a partial summary judgment ruling non-final and thus not appealable.  *Financial Relations Bd. v. Pawnee Corp.*, 240 N.W.2d 565 (Minn. 1976).  There was no express determination that there was "no just reason for delay" in entering judgment on the motion for partial summary judgment, and the Minnesota court did not direct the entry of final judgment. Thus, the partial summary judgment ruling cannot, under Minnesota law, have either res

judicata or collateral estoppel effect.  And, the Minnesota court's choice of law decision is not binding on this court.

Furthermore, with respect to the issue of jurisdiction, section 303.20, Minnesota Statutes, provides:

> 303.20. **Foreign corporation may not maintain action unless licensed**
> No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain an action in any court in this state until such corporation shall have obtained a certificate of authority; nor shall an action be maintained in any court by any successor or assignee of such corporation on any right, claim, or demand arising out of the transaction of business by such corporation in this state until a certificate of authority to transact business in this state shall have been obtained by such corporation or by a corporation which has acquired all, or substantially all, of its assets. If such assignee shall be a purchaser without actual notice of such violation by the corporation, recovery may be had to an amount not greater than the purchase price. This section shall not be construed to alter the rules applicable to a holder in due course of a negotiable instrument.
>
> The failure of a foreign corporation to obtain a certificate of authority to transact business in this state does not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any action in any court of this state.
>
> Any foreign corporation which transacts business in this state without a certificate of authority shall forfeit and pay to this state a penalty, not exceeding $1,000, and an additional penalty, not exceeding $100, for each month or fraction thereof during which it shall continue to transact business in this state without a certificate of authority therefor. Such penalties may be recovered in the district court of any county in which such foreign corporation has done business or has property or has a place of business, by an action, in the name of the state, brought by the attorney general.

As noted above, the parties to the Minnesota case stipulated to a dismissal without prejudice due to plaintiff Pro Image's lack of a certificate of authority to do business in Minnesota as required under Minn. Stat. § 303.20, and judgment was entered accordingly. (Doc. 112, exh. D).  Thus, under Minnesota law, the Minnesota court was not a court of competent jurisdiction, and the doctrine of collateral estoppel cannot apply.[1]  See *Haavisto v. Perpich*, 520 N.W.2d 727, 731 (Minn. 1994).

---

[1] In making this ruling, the court does not determine the choice of law issue. It only determines that the Minnesota court's decision does not have a binding effect on this court.

Accordingly, it is respectfully **RECOMMENDED**:

Defendant's Dillon's Motion to Dismiss Count II of Plaintiff's complaint and Motion to Preclude Application of Florida law to plaintiff's claims (doc. 112) be DENIED.

At Pensacola, Florida this 28th day of April, 2009.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten (10) days after being served a copy hereof.  *Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.*  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**